A96A1351. RJV CORPORATION v. SUPERVALU, INC.
(478 SE2d 592)

ANDREWS, Judge.

RJV Corporation leased supermarket space to SuperValu, Inc., which SuperValu subleased to other tenants for subrents in excess of the rent owed by SuperValu under the original lease. RJV claims SuperValu breached an agreement to pay RJV a portion of the sub-

rents paid to SuperValu in excess of the rent owed under the original lease. Both parties moved for summary judgment; the trial court granted summary judgment in favor of SuperValu, denied RJV's motion for summary judgment, and RJV appeals.

The original 20-year lease beginning October 1, 1977, between the predecessors-in-interest of RJV (Landlord) and SuperValu (Tenant) provided for monthly base rent of $6,054 plus a rent amount calculated as a certain percentage of gross sales. The original lease provided that SuperValu would not sublease the premises without obtaining the written consent of RJV; that, if SuperValu sought to sublet the premises for a non-supermarket use, it must give prior written notice to RJV; and that RJV "shall have the option of either accepting said action or cancelling this lease and releasing [SuperValu] of further liability."

The rent was paid under the original lease terms until September 1987 when SuperValu subleased the premises for the remaining term of the original lease through September 14, 1997, to Heritage Hardware, Inc. for a non-supermarket use. The sublease provided for monthly rental payments by Heritage to SuperValu in the amount of $9,375, over $3,000 more than the rent payable by SuperValu under the original lease. RJV consented to the Heritage sublease and agreed to modifications of the original lease in a document entitled "Consent to Sublease and Modification of Original Lease" (the consent agreement) executed by RJV, SuperValu, and Heritage. Under the consent agreement, RJV agreed that the provision in the original lease for payment of a percentage rent amount "is hereby deleted and is of no further force or effect." The consent agreement further provided that RJV was entitled to receive, not only the monthly base rent due from SuperValu under the original lease, but also a portion of the subrents paid by Heritage to SuperValu in excess of SuperValu's base rent under the original lease in the amount of $1,394.38 per month. The consent agreement also provided that "[SuperValu's] liability to [RJV] is limited to amounts payable under the original lease. All additional amounts are payable only if [Heritage] makes such payments."

Heritage ceased making rental payments under the sublease on March 1, 1990, when it defaulted on the sublease, went out of business, and vacated the premises. After Heritage defaulted, SuperValu continued to pay RJV the monthly base rent of $6,054 due under the original lease. On December 7, 1990, SuperValu filed suit against Heritage for breach of the sublease seeking the full monthly rental amount due during the term of the sublease. RJV was not a party to this suit. SuperValu eventually settled its suit in January 1992 for a cash payment from Heritage of $75,000 plus real property worth about $50,000, and terminated the sublease. None of the settlement

amount was paid to RJV.

On or about April 3, 1992, RJV received notice in writing of SuperValu's intention to sublease the premises to another non-supermarket subtenant, Atlanta Newspapers. RJV responded in a handwritten notation on the bottom of the notice that "[w]e will accept [Atlanta Newspapers] as a subtenant under the same rent and conditions as the Heritage sublease." SuperValu subsequently wrote RJV a letter on June 16, 1992, which attached a copy of the proposed sublease with Atlanta Newspapers, requested that RJV consent to the sublease, and stated that, pursuant to the terms of the original lease, RJV had the "option of either accepting [the proposed sublease to a non-supermarket tenant] or cancelling this lease and releasing [SuperValu] of further liability." After receiving no response to the letter from RJV, SuperValu subleased the premises to Atlanta Newspapers on June 29, 1992 through the end of the original lease term for subrent payments in excess of the base rent due by SuperValu under the original lease. On June 30, 1992, RJV, through its attorney, responded by letter to SuperValu stating that "[RJV] accepts your action to provide a subtenant for that premises for other than a Super Market use, and [RJV] does not release you from further liability under the [original] lease." The June 30 letter further stated that it was RJV's position that the consent agreement signed in 1987 in conjunction with the Heritage sublease, which obligated SuperValu to pay RJV a share of any subrents paid by Heritage in excess of the base rent due by SuperValu under the original lease, also obligated SuperValu to pay RJV a similar share of any subrents paid by Atlanta Newspapers in excess of the base rent. The letter concluded that "you may . . . sublease directly to the Atlanta newspapers at your own risk of liability [to RJV under the consent agreement], or, on the other hand, acknowledge your obligation to continue the sublease profit sharing arrangement." After the sublease to Atlanta Newspapers, SuperValu continued to make the base rent payments due to RJV under the original lease, but made no payments to RJV of subrents paid in excess of the base rent.

RJV brought the present action against SuperValu claiming that SuperValu: (1) breached the original lease by failing to obtain RJV's written consent for the Atlanta Newspapers sublease; (2) breached the original lease by entering into the Atlanta Newspapers sublease and failing to pay RJV the sum of $1,394 per month from subrents paid in excess of the base rent due under the original lease; (3) breached the consent agreement by failing to pay RJV $1,394 per month from the settlement of the lawsuit against Heritage; and (4) breached the consent agreement by terminating the Heritage sublease without RJV's consent.

In the trial court, RJV sought to recover payments of $1,394.38

per month from the time Heritage defaulted on its sublease in March 1990 through the end of the original lease term in September 1997, representing a total amount of $125,494.20. RJV's primary contention was that the terms of the original lease and the consent agreement were unambiguous and established that, in addition to the base rent of $6,054 per month, RJV was entitled to receive $1,394.38 per month from subrents in excess of the original lease rent paid by any subtenant during the term of the lease. Accordingly, RJV contended that the original lease and consent agreement required that SuperValu pay, not only the base rent of $6,054 per month for the lease term, but also $1,394.38 per month in excess subrents paid by Heritage and Atlanta Newspapers during the lease term. SuperValu, on the other hand, contended that the original lease and the consent agreement provided for payment of the $1,394.38 portion of monthly subrents only under the Heritage sublease and had no application to any other subtenant.

In granting summary judgment in favor of SuperValu and against RJV, the trial court found that: (1) RJV was not entitled to any portion of subrents paid by Atlanta Newspapers; (2) that SuperValu's consent agreement to pay RJV a portion of subrents paid under the Heritage sublease did not obligate it to give RJV any portion of its subsequent settlement of litigation with Heritage; and (3) that SuperValu breached no duty to RJV by terminating the Heritage sublease and entering into the Atlanta Newspaper sublease. The trial court also granted summary judgment in favor of SuperValu on RJV's claims for attorney fees, expenses of litigation, and prejudgment interest.

1. We agree that RJV is not entitled to any portion of subrents paid under the Atlanta Newspapers sublease because there is no evidence of an agreement between SuperValu and RJV for such payments. Where, as here, the contract terms are clear and unambiguous, the language of the contracts alone governs the intention of the parties. *Archer v. Carson*, 213 Ga. App. 161, 164 (444 SE2d 82) (1994). Nothing in the original lease between RJV and SuperValu, or in the consent agreement executed by RJV, SuperValu, and Heritage, or in the sublease between SuperValu and Heritage provides that the subrent payments to RJV under the Heritage sublease were to continue under subsequent subleases. To the contrary, these agreements deal exclusively with the Heritage sublease. Moreover, the consent agreement specifically provided that SuperValu's liability to RJV was limited to the base rent amounts payable under the original lease and that any additional subrents were payable to RJV only if Heritage made the subrent payments. There is no evidence of any other agreement between RJV and SuperValu to share a portion of the subrents paid by Atlanta Newspapers. The trial court properly granted

summary judgment in favor of SuperValu on this issue.

2. The trial court also properly granted summary judgment in favor of SuperValu on RJV's claim that SuperValu breached its contractual obligation under the original lease to obtain written consent to sublease to Atlanta Newspapers. RJV received the required written notice that SuperValu proposed to sublease to Atlanta Newspapers and received a subsequent request from SuperValu to consent to the sublease. The original lease provided that, in response to SuperValu's notice and proposed sublease to a non-supermarket use, RJV "shall have the option of either accepting said action or cancelling this lease and releasing [SuperValu] of further liability."

In response, RJV elected not to cancel the original lease, accepted Atlanta Newspapers as a subtenant, but expressed disagreement with the terms of the proposed sublease. RJV took the position that the sublease was controlled by the earlier consent agreement executed in conjunction with the Heritage sublease and would require the same additional subrent payments to RJV along with the base rent. RJV told SuperValu that it could either "sublease directly to the Atlanta newspapers at your own risk of liability [to RJV under the consent agreement], or, on the other hand, acknowledge your obligation to continue the sublease profit sharing arrangement." Thus, RJV gave SuperValu the choice of either agreeing to sublease on the conditions RJV insisted upon or subleasing without those conditions at its own risk. We need not speculate as to whether this constituted some form of consent. Clearly, the original lease provided that RJV's options were to either accept the sublease or cancel the original lease. By electing not to cancel the original lease and taking this position, RJV acquiesced in SuperValu's sublease to Atlanta Newspapers and is estopped to deny that it consented to the sublease. Since these facts unequivocally support application of the doctrine of estoppel, the trial court properly granted summary judgment on this basis. *Eiberger v. West*, 247 Ga. 767, 769-770 (281 SE2d 148) (1981).

3. The trial court erred in granting summary judgment in favor of SuperValu on RJV's claim seeking a share of SuperValu's settlement proceeds in the SuperValu-Heritage litigation. In this claim, RJV sought to recover from the settlement proceeds the portion of the defaulted Heritage subrents that it would have been entitled to receive from SuperValu under the consent agreement in the amount of $1,394.38 per month. The sublease provided that the subrent was payable by Heritage directly to SuperValu. Under the consent agreement, SuperValu was obligated to pay RJV a portion of the subrent it received from Heritage. Nothing in the sublease or the consent agreement gave RJV a basis for a cause of action against Heritage for failure to pay the subrent due to SuperValu under the sublease. The

cause of action against Heritage for failure to pay the subrents belonged to SuperValu.

SuperValu sued Heritage for breach of the sublease seeking the full monthly subrents due during the term of the sublease. The amount sought included the sums SuperValu was obligated to pay to RJV from subrents paid by Heritage. SuperValu settled the suit against Heritage for approximately $125,000. In the settlement, SuperValu released all claims it had against Heritage under the sublease. SuperValu notified RJV of the action against Heritage and sent RJV a copy of the suit. RJV took no action to join in the litigation. Although an RJV representative testified that SuperValu indicated it would pay RJV from the money collected in the suit, RJV concedes there was no agreement or discussion as to the amount it would receive.

RJV had an interest in the action brought by SuperValu against Heritage to collect the subrents since it had a right to receive a portion of subrents paid by Heritage to SuperValu. The proper procedure to address and protect RJV's interest in the action would have been to join RJV in the suit against Heritage as a plaintiff under OCGA § 9-11-19 (a) (2) (A), which provides that "[a] [corporate] person wh[ich] is subject to service of process shall be joined as a party in the action if . . . [it] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may . . . [a]s a practical matter impair or impede [its] ability to protect that interest." See OCGA §§ 1-2-1; 1-3-3 (14). In that manner, any dispute as to subrents due between SuperValu and RJV could have been resolved by a cross-claim in the action. See *Dept. of Human Resources v. Bagley*, 240 Ga. 306, 307 (240 SE2d 867) (1977). The prosecution and settlement of the suit and the release of Heritage by SuperValu, in the absence of any effort by SuperValu to seek joinder of RJV as a party under OCGA § 9-11-19, had the effect of destroying any ability RJV would have had to protect its interest in the litigation and left RJV without any legal avenue to present a claim against Heritage for the subrents. Under these circumstances, equity dictates that a factfinder now determine what portion, if any, of the settlement should be shared with RJV.

4. In light of the above rulings, we find no basis for imposition of attorney fees sought by RJV pursuant to OCGA § 13-1-11 for alleged breach of the original lease and the Heritage sublease and no basis for the award of pre-judgment interest. As to bad faith attorney fees and expenses sought by RJV pursuant to OCGA § 13-6-11, RJV points to no facts and provides no argument in support of this claim. Accordingly, the trial court properly granted summary judgment as to these claims.

*Judgment affirmed in part and reversed in part. Pope, P. J., and*

*Smith, J., concur.*

DECIDED OCTOBER 22, 1996 —
RECONSIDERATION DENIED NOVEMBER 19, 1996.

*Meadows, Ichter & Trigg, James D. Meadows, Rhett E. W. Marionneaux, Jr.,* for appellant.

*Swift, Currie, McGhee & Hiers, Jeffrey Y. Lewis, John O. Sullivan,* for appellee.